[Cite as *State ex rel. Werman v. Indus. Comm.*, 2017-Ohio-4409.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Alfred E. Werman, III, | : | |
| Relator, | : | |
| v. | : | No. 16AP-637 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| C & A Ambulance, Inc., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on June 20, 2017

*Law Offices of Brelo & Annotico,* and *Ronald A. Annotico,* for relator.

*Michael DeWine,* Attorney General, and *Latawnda N. Moore,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

TYACK, P.J.

{¶ 1} Alfred E. Werman, III, filed this action in mandamus, seeking a writ to compel the Industrial Commission of Ohio ("commission") to grant him an award of permanent total disability compensation.

{¶ 2} In accord with Loc.R. 13 of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings.

{¶ 3} The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of law. The magistrate's decision includes a recommendation that we deny the request for a writ of mandamus.

{¶ 4}   No party has filed objections to the magistrate's decision.

{¶ 5}   We, as a court, now undertake an independent review of the magistrate's decision.

{¶ 6}   We find no error of law or fact on the face of the magistrate's decision.  We, therefore, adopt the findings of fact and conclusions of law contained in the magistrate's decision.  As a result, we deny the request for a writ of mandamus.

*Writ of mandamus denied.*

SADLER and BRUNNER, JJ., concur.

————————————

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Alfred E. Werman, III, | : | |
| Relator, | : | |
| v. | : | No.  16AP-637 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| C & A Ambulance, Inc., | : | |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on March 21, 2017

*Law Offices of Brelo & Annotico,* and *Ronald A. Annotico,* for relator.

*Michael DeWine,* Attorney General, and *Shaun P. Omen,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 7}  Relator, Alfred E. Werman, III, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denies his application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that award.

Findings of Fact:

{¶ 8} 1. Relator sustained a work-related injury on February 24, 1987 while working as an EMT.

{¶ 9} 2. Relator's workers' compensation claim has been allowed for the following conditions: "strain low back, neck and both shoulders; bulging annulus L4, L5; major depressive disorder single."

{¶ 10} 3. Relator was unable to return to his job as an EMT following the injury and received temporary total disability ("TTD") compensation for several years until he resumed employment as a cashier.

{¶ 11} 4. Relator has not undergone any surgeries for the allowed conditions in his claim; however, he had surgeries for non-allowed conditions of his neck in 2005 and 2006.

{¶ 12} 5. In 2005, relator filed an application with the Social Security Administration seeking a determination of disability based on the following conditions:

> [C]hronic neck pain status post surgical fusion and stabilization with plate and screws; major depressive disorder, generalized anxiety disorder; and lumbar radiculopathy.

Ultimately, the Social Security Administration found that relator had been disabled as defined by the Social Security Act since August 2005, the date he filed his application.

{¶ 13} 6. Relator began receiving TTD compensation again, effective June 7, 2009. This award was based solely on the allowed psychological condition.

{¶ 14} 7. Marian Chatterjee, Ph.D., performed a psychological evaluation of relator on December 12, 2013. With regard to the onset of his psychological problems and his treatment, Dr. Chatterjee stated:

> The IW had marital and personal counseling in 1987 or 1990 and was taking Paxil at the time of his injury. He developed Major Depression, Single Episode, as a result of the work injury. Reports of when he began treatment for his injury-related condition vary widely. The IW said he began treatment in 2007. IMEs vary in their reports as to when the IW began treatment for his injury-related depression from 1997 ("Ten years after his injury," to 2006, as per Dr. Sargious' C84.) He has been in counseling with Keith Burger,

LISW, and has seen a psychiatrist, Ehab Sargious, M.D., for at least the last seven years. He stated for the last year he has been seen by Mr. Burger twice a month, yet records do not support this. In fact, in his treatment summary on 10/16/2013, Mr. Burger stated the IW had only been to counseling four times in the last six months. Presently, the IW takes Paxil 40mg qd, Wellbutrin 150mg qam, Seroquel 50mg hs, and Valium 10mg qid. On 10/11/11, the IW went to Trumbull Memorial ER for suicidal ideation after having researched how to kill himself and it said to get help before trying. He was not admitted to the hospital. Per Trumbull Memorial Hospital ER notes, "Past psychiatric history: prior diagnosis: depression. Severity of symptoms: At their worst, symptoms were moderate. It is unknown whether patient has had similar symptoms in the past. PATIENT READING A BOOK ON HOW TO KILL SELF. HANGING 75 PERCENT EFFECTIVE, SHOOTING, MAY FLINCH. Associated signs and symptoms: Pertinent positives: depression: BROTHER SICK, MAKING PATIENT DEPRESSED, BUT NO INTENT ON KILLING SELF HE INSISTS. WIFE AND FAMILY AND FRIENDS LATER HERE INSIST PATIENT GO HOME THAT HE IS NOT SUICIDAL." The IW has been on his current psychotropic meds for about eight months and seeing his counselor "twice a month" per self-report but not even once a month per the 10/16/13 treatment summary. In therapy at least the past six years, when asked how he feels he is doing, he stated, "A little bit better." He thinks he tries to do more house chores than he used to. "I'm trying to look at my cup as half full." He was unable to articulate actual behavior changes. "I think I am more patient with my decisions."

{¶ 15} With regard to his current mental state and level of functioning, Dr. Chatterjee opined that relator had reached maximum medical improvement ("MMI"), stating:

[T]he IW has undergone many years of psychiatric and psychological treatment. Reports of when he began treatment vary greatly. In Dr. Villalba's IME 11/1/12, he states the IW has been in treatment for depression 8 years. In Dr. Leach's 3/16/12 report, he states treatment began 10 years after the 1987 work injury. Dr. Sargious' C84, dated 7/6/11, indicated a disability starting date on 2/10/06. Dr. Pecorelli's C92, dated 10/10/11, states the IW began treatment in 2005. His psychotropics have remained

unchanged for at least eight months. In his treatment summary of 10/16/13, Mr. Burger stated the IW had been seen four times in the last six months. In addition, stressors were overwhelmingly unrelated to the work injury, "Most of the problem children, family members are no longer living with them and so stress is down for the moment. But he is about to become embroiled in a custody fight for two of his children, which if successful would once again change the family dynamics and likely increase stress on him and his wife Judy. Custody fights and blended families are often stressful and I expect this situation to be no different. If he should lose the custody fight, it would be most difficult for him to accept." An 8/2/12 summary by the IW's therapist focused almost exclusively on the IW's numerous family stressors. While the consequences of his injury are significant and persistent, there are numerous significant stressors that in my opinion are not directly related to the injury. Besides being very much affected by the family dysfunction, the IW was unable to articulate any objective progress. He has reached a treatment plateau.

{¶ 16} Considering only his psychological conditions, Dr. Chatterjee opined that relator would be able to return to his former work and that he did not need any more psychological treatment for the allowed conditions in his claim. With regard to his overall psychiatric condition, Dr. Chatterjee noted that he had many life stressors which were unrelated to his 1987 work injury and those stressors continued to cause him problems.

{¶ 17} 8. Relator's compensation was terminated effective January 23, 2014 based on a finding that the allowed conditions in his claim had reached MMI. The commission relied on the report of Dr. Chatterjee.

{¶ 18} 9. Relator filed his application for PTD compensation on September 18, 2015. At that time, relator was 51 years old. According to his application, relator indicated that he had obtained his GED and had received an associate's degree from Cuyahoga Community College. He could also read, write, and perform basic math and indicated that he had participated in some vocational rehabilitation.

{¶ 19} 10. Relator's application for PTD compensation was supported by medical reports from Douglas Muccio, Ph.D., and M.P. Patel, M.D. In his May 21, 2015 report, Dr. Muccio opined that relator's psychiatric condition alone rendered him unable to be competitively employed. In his July 20, 2015 report, Dr. Patel provided his physical

findings on examination and opined that, as a result of the allowed physical conditions in his claim, relator was permanently and totally disabled from engaging in any gainful employment.

{¶ 20} 11. John L. Dunn, D.O., examined relator for his allowed physical conditions. In his April 4, 2016 report, Dr. Dunn identified the allowed conditions in relator's claim and provided his physical findings on examination. Dr. Dunn opined that relator had a 42 percent impairment for the current allowed physical conditions and opined that relator was capable of performing medium level work.

{¶ 21} 12. Relator's application was heard before a staff hearing officer ("SHO") on June 22, 2016. The SHO discussed relator's injury, his work history following the injury, and spent a considerable amount of time discussing the disability application filed with the Social Security Administration. The SHO quoted from the determination, stating:

> The Administrative Law Judge determined that the Injured Worker has "severe impairments: ***chronic neck pain status post-surgical fusion and stabilization with plate and screws.***" (Emphasis added.) The Administrative Law Judge explained further as follows:
>
> The medical evidence of record reflects the claimant's <u>multiple cervical spine surgeries</u>, and documents <u>post-surgical imaging showing swelling and continuing disc space narrowing</u>. <u>The claimant's head and neck pain has been so severe as to require emergency treatment</u>, and physical examination shows continued right upper extremity weakness. <u>In terms of the lumbar spine, imaging showed disc herniation</u>. The most recent physical examination showed decrease range of motion throughout, and in terms of the lower extremities, positive straight leg raising test, decreased sensation in the L5 distribution, inability to heel-toe walk, and wide based in the L5 distribution, inability to heel-toe walk, and wide-based gait. Chronic pain has leg to increased depression, requiring emergency treatment related to suicidal ideation. (Emphasis added.)
>
> Based upon the above findings, the Administrative Law Judge awarded the Injured Worker Social Security Disability benefits for a disability period commencing 8/23/2005. ***Again, this worker's compensation claim has not been recognized for any cervical disc disorder or lumbar disc herniation.*** The Administrative Judge of the

> Social Security Administration clearly based his impairment determination on conditions presently outside the scope of this worker's compensation claim.

(Emphasis sic.)

{¶ 22} Ultimately, the SHO relied on the same medical evidence relied on by the Social Security Administration as well as the report of Dr. Dunn and opined that, based solely on the allowed physical conditions in his claim, relator was able to perform at a medium strength level.

{¶ 23} With regard to the allowed psychological condition, the SHO relied on the report of Dr. Chatterjee stressing her opinion that, based on the allowed psychological condition, relator could return to his former position of employment as an EMT.

{¶ 24} Thereafter, the SHO considered that relator's age of 52 years was a positive factor which provided him time to undergo and re-education or training necessary to find employment within his residual capacity, his attainment of a GED and an associate's degree were also considered positive factors. Thereafter, the SHO considered his employment as an EMT, cashier, and a sales associate to have provided him with skills that were transferrable to work within his residual functional capacity. As a result, the SHO denied his application for PTD compensation.

{¶ 25} 13. Relator's request for reconsideration was denied by order mailed August 13, 2016.

{¶ 26} 14. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 27} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 28} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought

and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 30} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 31} Relator's first argument is that the commission abused its discretion by relying on the report of Dr. Chatterjee. First, relator argues that Dr. Chatterjee's report was stale and the purpose of the report was not to assess whether or not relator was permanently and totally disabled. Second, relator argues that Dr. Chatterjee's report did not take into account intervening events which resulted in the deterioration of his psychological condition.

{¶ 32} Pursuant to Ohio Adm.Code 4121-3-34(C)(1) with regards to applications for PTD compensation, any medical examination on which a report is based must be performed within 24 months prior to the date of the filing of the application for PTD compensation. As such, Dr. Chatterjee's report is not necessarily stale as a matter of law. Further, although the examination and report were conducted and written to evaluate

whether or not relator continued to be entitled to TTD compensation as opposed to PTD compensation, Dr. Chatterjee did address the issue which is pertinent in a PTD determination. Dr. Chatterjee specifically stated that relator's allowed psychological condition was not work prohibitive. In fact, Dr. Chatterjee opined that relator could return to his former position of employment when only the allowed psychological condition was considered. As such, Dr. Chatterjee's report was not necessarily stale and did address the pertinent question.

{¶ 33} Part of relator's staleness argument is that Dr. Chatterjee's report did not take into account relator's attempted suicide and hospitalizations which occurred after Dr. Chatterjee wrote her report. This part of relator's argument necessitates a review of the medical records related to these occurrences. The April 11, 2016 report from Ten Lakes Center indicates:

> 51 year old Caucasian male, presenting to the ED after a suicide attempt by crashing his car in to a pole while intoxicated. PT is sad, depressed, hopeless, emotionally unstable and anxious. PT has marital problems and said that he is tired of life and hates life. PT needs to be evaluated to ensure safety and stability.

{¶ 34} Additional records from Ten Lakes Center, including the report dated April 11, 2016, indicate that relator's history was significant for depression, as well as chronic back, neck, and hip pain. Those records indicate that the neck surgery relator underwent did not have a positive outcome.

{¶ 35} As Dr. Chatterjee noted in her report, relator has other significant life stressors which impact his psychological condition. Nothing in the records from Ten Lakes Center supports relator's argument that his attempt at suicide resulted from the allowed condition in his workers' compensation claim. Instead, evidence of his marital problems, the upcoming custody battle, and the pain in his neck from a failed surgical surgery significantly impacted him both physically and psychologically. As such, to the extent that relator argues that Dr. Chatterjee's report is stale because it does not take into account his attempt at suicide and psychiatric hospitalizations is not supported by the medical evidence in the record as it cannot be said that those events were related to the allowed conditions in his claim. As such, the magistrate finds that relator did not

demonstrate that the commission abused its discretion when it relied on the report of Dr. Chatterjee.

{¶ 36} Relator also argues that the commission arbitrarily and unreasonably rejected his competent medical evidence pertaining to his allowed physical conditions without explanation. The magistrate specifically rejects this argument because, by law, the commission is only required to identify the medical evidence on which it relies and provide a brief explanation. The commission is not required to mention other reports which are also in evidence, nor is the commission required to provide any explanation for why it found certain medical evidence to be unpersuasive. *See State ex rel. DeMint v. Indus. Comm.*, 49 Ohio St.3d 19 (1990); *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250 (1996). Further, the commission is the sole evaluator of the medical evidence and it is immaterial whether there is other evidence, even if greater in quantity or quality. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981); *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373 (1996).

{¶ 37} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied his application for PTD compensation and this court should deny his request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).